J^STEWART, J.
A unanimous jury of six found the defendant, Natasha Marston, guilty as charged on one count of forgery, La. R.S. 14:72. The trial court denied an oral motion for post-verdict judgment of acquittal and sentenced the defendant to a suspended eighteen-month parish jail sentence with eighteen months active supervised probation. On appeal, the defendant argues that the evidence was insufficient to convict. Finding the evidence presented at trial insufficient to convict, we reverse.
FACTS
On December 6, 1996, three unidentified women entered Montgomery Interiors where Janet Meier was working. When the store closed, Meier noticed that her wallet and checkbook were missing. A few days later, two of Meier’s checks were cashed at different branches of Hibernia National Bank. Check no. 11,600 in the amount of $400 was cashed at a Youree Drive Branch and a second unnumbered cheek, also in the amount of $400, was cashed at an East Kings Highway branch.
Both checks were made payable to “Natasha Marston” and purport to be endorsed by her. The defendant’s Louisiana driver’s license number is on the face of both checks and her social security number is on check no. 11,600.
The North Louisiana Crime Lab twice examined both checks along with known samples of the defendant’s handwriting and determined there were “strong indications” that the defendant had endorsed both checks and that she wrote the known samples. The defendant surrendered to police in September 1997 after learning of a warrant for her arrest. She denied any knowledge of the theft or forgery, stated that she had previously lost her license, and suggested that the signatures resembled that of her sister-in-law.
I ^DISCUSSION
The defendant contends that there is insufficient evidence to convict her because the State failed to prove beyond a reasonable doubt that she cashed the checks in question. She asserts that the endorsements were misspelled, she was never identified by anyone as the person who cashed the checks, and that the results of the handwriting examinations were inconclusive. Furthermore, the defendant contends that the State did not exclude the reasonable hypothesis of innocence that her sister-in-law committed the offense.
In Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) the United States Supreme Court set forth the standard for reviewing whether evidence is sufficient to support a conviction. The appellate court must determine whether the evidence, viewed in the light most favorable to the prosecution, is sufficient to convince a rational trier of fact that all of the elements of a crime have been proven beyond a reasonable doubt. State v. Nealy, 450 So.2d 634 (La.1984); State v. Doby, 540 So.2d 1008 (La.App. 2 Cir.1989), writ denied, 544 So.2d 398 (La.1989).
Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Durham, 32,154 (La.App. 2 Cir. 8/20/99), 748 So.2d 1; State v. Bullard, 29,662 (La.App. 2 Cir. 9/24/97), 700 So.2d 1051, and citations therein.
The rule of circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. This court has recently reiterated this rule when a conviction is based on circumstantial evidence. In State v. Durham, supra, we reversed a conviction for forging documents related to the Caddo Parish Com *565 mission’s hiring and selection practices because the | ¡¡circumstantial evidence simply did not exclude every reasonable hypothesis of innocence. Id.
La. R.S. 14:72 defines the crime of forgery as:
Forgery is the false making or altering, with intent to defraud, of any signature to, or any part of, any writing purporting to have legal efficacy.
Issuing or transferring, with intent to defraud, a forged writing, known by the offender to be a forged writing, shall also constitute forgery.
In order for a court to find that a person has committed the crime of forgery, it is required that the “forgery be committed with the specific intent to defraud.” Durham, supra and State v. Wade, 375 So.2d 97 (La.1979), cert. denied, 445 U.S. 971, 100 S.Ct. 1665, 64 L.Ed.2d 249 (1980).
This is a circumstantial evidence case. We conclude that the evidence in this case fails to meet the test relied upon in Durham. Therefore, we reverse the trial court’s ruling and set aside the defendant’s conviction.
First, the State failed to present any witnesses who could identify the defendant as one of the three women who “allegedly” stole the checks. Ms. Meier stated that on December 6, 1996 shortly before closing, three women entered her place of employment and remained there for about five minutes. Ms. Meier said that she did not notice that her wallet and checkbook were missing until after the store closed for the evening. As a result, Ms. Meier apparently assumed that one of the three women had taken her wallet and checkbook because after searching, she could not locate them. However, Ms. Meier never identified the defendant through a lineup nor any other forum as one of the women who entered the store that day.
Furthermore, the State failed to produce a single Hibernia Bank employee, or any other witness who could identify the defendant as the person who cashed the checks. Leo Languirand, a Hibernia Bank employee who works in the security department, was the only Hibernia employee who testified at trial. Languirand |4admitted that he never came into contact with the person who wrote the checks that were allegedly forged. As such, Languirand could not identify the defendant as the person who cashed the checks.
Languirand also testified about the bank’s normal business practices. Langui-rand identified the checks and testified that the notation “PSM” which was written on them stands for “picture signature match.” Languirand explained that when a person comes to Hibernia to cash a check, the bank teller looks at the check casher’s identification and notes on the check the type of identification used. The teller then looks at the picture on the identification and at the person cashing the check and if the picture matches the person cashing the check, the teller writes “PSM” on the check. While Languirand’s testimony assists this Court in understanding bank procedures, his testimony, alone, does not exclude the “reasonable hypothesis” that the bank teller who serviced the individual cashing the checks that day failed to follow Hibernia’s business practices.
In Durham, the state linked the defendant, Judy Durham, to the criminal acts of her employee who, in an effort to ensure that a particular job applicant would be hired for the position, falsified documents related to the hiring process. This Court stated that “because Durham wanted to ensure that Holloway would be hired, ... and because Durham would politically benefit from any concealment of unsavory aspects of the hiring process, then it must be inferred that Durham would be a principal to Doyle’s efforts to back-date the revision to the job specifications or white-out that Doyle submitted Holloway’s application.” Durham, supra. However, this Court held that “without any evidence to support such allegation, the inference is nothing *566 more than mere speculation.” Durham, supra.
Similarly here, the State assumes that because the bank has certain business practices which are meant to be adhered to, that automatically means that the employees abide by those procedures in every instance. However, without any ^evidence to support this assumption, such as a Hibernia employee or a witness who could identify the individual who cashed the checks, this inference, likewise, amounts to mere speculation. Thus, the State failed to present a single witness who could positively identify the defendant as the person who cashed the checks.
Second, the State failed to “exclude every reasonable hypothesis of innocence” that the writings on the checks were made by the defendant. At trial, Detective Ger-main of the Shreveport Police Department testified that he sent the original checks, photostatic copies of the checks and photostatic copies of the defendant’s Louisiana driver’s license to the North Louisiana Criminalistics Laboratory for handwriting examinations. However, Detective Ger-main did not send the defendant’s original Louisiana driver’s license to the lab. Although the results determined that there were “strong indications” that the signature on the photocopy of the defendant’s driver’s license matched the endorsement signature on the two checks, Detective Germain admitted that these results were not conclusive and could not definitively indicate that the checks were endorsed by the defendant. In fact, Detective Germain stated that according to a hierarchical list of definitions provided by the handwriting examiner’s office that ranks the likelihood of a match, handwriting analyses that provide “strong indications” of a match tend to fall midway between the seven possible categories. Detective Germain stated that in ranking potential matches in order from strongest to • least likely, the categorizations are as follows: (1) suspect can be identified, (2) strong probability, (3) probable, (4) indications, (5) no conclusion, (6) indications they did not match, (7) probably did not match. Furthermore, Detective Germain stated that the analysis could have been more conclusive if original documents containing the defendant’s actual handwriting, rather than copies of the originals, were used. As well, Detective Germain indicated that when the crime lab administered a second analysis of the defendant’s known original handwriting, the results were the same. |fiAs a result, the handwriting examinations which proved to be inconclusive, provide mere circumstantial evidence that fails to pass the Durham test.
Finally, the endorsements on the checks do not substantiate the trial court’s conviction because they are inconsistent. Both checks that were allegedly stolen were made payable to Natasha Marston. However, the endorsement signature on check # 11600 reads “Natasha Masten,” while the endorsement signature on the unnumbered check reads “Natasha Marsten.” This evidence, combined with the inconclusive handwriting analyses, also fails to satisfy the Durham test.
Upon review of the evidence, we find that the State has failed to prove beyond a reasonable doubt that the defendant committed forgery.
CONCLUSION
We hereby reverse the trial court’s ruling and set aside the defendant’s conviction.
CONVICTION REVERSED; SENTENCE VACATED AND SET ASIDE; DEFENDANT ORDERED RELEASED.
KOSTELKA, J., dissents with reasons.