780 So.2d 1058 (2001)
STATE of Louisiana
v.
Natasha MARSTON.
No. 2000-K-0589.
Supreme Court of Louisiana.
March 16, 2001.
*1060 Richard P. Ieyoub, Attorney General, Paul Carmouche, District Attorney, Catherine M. Estopinal, Joseph W. Greenwald, Jr., Tommy J. Johnson, Shreveport, Counsel for Applicant.
Diane L. Foster, Englewood, CO, David R. McClatchey, Shreveport, Counsel for Respondent.
PER CURIAM.
The state charged respondent with a single count of forgery in violation of La. Rev.Stat. 14:72 on the basis of two stolen checks made payable to respondent and cashed on the same day at two different branches of the Hibernia National Bank in Shreveport. Jurors found respondent guilty as charged and the court sentenced her to 18 months imprisonment in the parish prison. The court suspended the sentence and placed respondent on active probation for 18 months. On appeal, a majority of the Second Circuit panel reversed respondent's conviction and sentence on grounds that the state's circumstantial evidence at trial had failed to exclude every reasonable hypothesis of innocence. State v. Marston, 32,446 (La. App. 2 Cir. 12/1/99), 748 So.2d 563. We granted the state's writ application to review the correctness of that determination, 00-0589 (La.9/29/00), 769 So.2d 1217, and now reverse.
Just before closing time on Friday afternoon, December 6, 1996, three women entered Montgomery Interiors in Shreveport, the place of employment of victim, Janet Meier. Mrs. Meier noticed one of the women bend down near her desk where her purse was stored, but she was busy assisting customers and did not see the woman remove anything from the purse. The three women left the store within minutes. Approximately one hour later, as she was closing the store, Mrs. Meier noticed that her wallet, containing her checkbook, credit cards, and cash, was missing. Because the Hibernia bank was already closed, Mrs. Meier was unable to report the missing checkbook until the following morning.
On Monday, December 9, 1996, two of Mrs. Meier's checks, drawn on a joint account with her husband, John Meier, were cashed at two different branches of Hibernia National Bank. Check number 11600, in the amount of $400, was cashed at the Youree Drive branch at 5:38 p.m. An unnumbered check, also in the amount of $400, was cashed at the East Kings Highway branch twelve minutes later. Both checks were made payable to respondent, and the tellers accepting them wrote the number of respondent's Louisiana driver's license on the face of the checks. The teller at the Youree Drive branch also recorded respondent's social security number on the check and placed next to that number the initials "PSM." However, respondent's social security number and the initials "PSM" do not appear on the face of the unnumbered check cashed at the East Kings Highway branch.
*1061 Investigation of the forgeries began with respondent, as she was the payee on the checks. Det. J.D. Germain went to respondent's last known address and spoke with a person identifying herself as respondent's sister. Det. Germain left his card and asked that she have respondent call him, but he never heard from her. A warrant later issued for respondent's arrest.
In September, 1997, the police stopped respondent for a traffic violation and she informed the officers that she could not produce her driver's license because it was missing. The officer conducted a computer check of her name and learned of the outstanding arrest warrant for forgery. Thereafter, defendant reported to the police station and was arrested for forging the two Meier checks. After Det. Germain advised her of her Miranda rights, defendant denied ever seeing the checks or having any knowledge of the Meiers. She then stated to the officer that her sister-in-law had committed the crimes. However, subsequent handwriting analysis revealed "strong indications," if not a positive identification, that defendant had endorsed the two checks.
At respondent's trial, Mr. and Mrs. Meier each denied authorizing defendant to draw from their joint checking account by writing checks. Detective Germain related his participation in the case and acknowledged that two handwriting examinations had to be conducted, because he was unaware that original writing had to be submitted to the North Louisiana Criminalistics Laboratory for an accurate comparison, and he sent only photocopies of the two checks to be compared with the known sample, a photocopy of respondent's signature on her driver's license. After receiving the initial report from North Louisiana Criminalistics, Det. Germain took a proper handwriting exemplar from defendant for comparison with the checks. Both analyses yielded the same result: a strong indication that respondent endorsed the back of the checks. In the hierarchy of likely matches, "strong indications" ranks midway of the seven possible categories ranging from a positive match to probable mismatch.
The state also introduced the testimony of Leo Languirand, an employee in the security department of Hibernia Bank, to explain the bank's procedure on check cashing. According to Languirand, the teller must first request that the customer produce a picture identification. The teller must then look at the person to match the face with that depicted on the identification card. Finally, the teller must note on the check what type of identification was used, e.g., driver's license, and then mark the check "PSM," which stands for "picture signature match." After completing this procedure, the teller may then cash the customer's check. Languirand acknowledged that he had no other connection with the case and the state did not call either of the two tellers responsible for cashing the checks.
Respondent testified and denied forging either of the checks or presenting them for payment. She told jurors that she had lost her driver's license in October, 1996, approximately three months before the theft of Janet Meier's checks, and did not replace it until December 16, 1997. She further denied ever going to Montgomery Interiors. As she had with Det. Germain, respondent blamed the crimes on her sister-in-law.
The defense focused on respondent's testimony that she had lost her license well before the theft and forgery of Janet Meiers's checks and that, because respondent's license number, social security number, and signature appeared on the face of the license, anyone who had access to her license could easily replicate defendant's signature. Jurors rejected this hypothesis of innocence. However, the court of appeal found that, in the absence of a positive match in handwriting on the check, and in the absence of any testimony from the tellers who actually cashed the checks that they had followed the correct banking procedure and verified that the person presenting the checks matched respondent's *1062 picture on her driver's license, the state's case had otherwise simply invited the jury to speculate about respondent's guilt. Marston, 32,446 at 5-6, 748 So.2d at 566. The majority on the panel buttressed that conclusion by agreeing with defense counsel's closing argument which prompted jurors to consider that while both checks had been made payable to Natasha Marston, the endorsements on the back of the check number 11600 appeared to spell respondent's name "Masten" and the endorsement on the second check appeared to spell out "Marsten." Marston, 32,446 at 6, 748 So.2d 566.
In evaluating the sufficiency of the evidence to support a conviction, a reviewing court must determine whether, taking the evidence in a light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Additionally, "when a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." State v. Captville, 448 So.2d 676, 680 (La.1984). However, jurors must rationally reject the hypothesis advanced by the defendant. While the Jackson standard of review does not permit an appellate court to substitute its own opinion for that of the trier of fact as to what has or has not been proved by the state's evidence, "`the jury cannot be permitted to speculate if the evidence is such that reasonable jurors must have a reasonable doubt.'" State v. Mussall, 523 So.2d 1305, 1311 (La.1988) (quoting 2 Charles Wright, Federal Practice & Procedure, Criminal 2d, § 467 (2d ed.1982)).
In Louisiana, a person who acts with an intent to defraud commits the crime of forgery either by falsely altering or making any writing purporting to have legal efficacy or by issuing (transferring) a forged writing with knowledge of its falsity. La.Rev.Stat. 14:72. In the present case, we agree with the dissent that a rational trier of fact could have reasonably rejected the hypothesis of innocence offered by the defendant at trial and found her guilty of issuing at least one of the forged checks. Defense counsel had no objection to the testimony of Detective Germain about the results of the state's handwriting expert. Despite its hearsay content, that testimony became substantive evidence for the jury to consider. State v. Allien, 366 So.2d 1308, 1311 (La. 1978) ("In the ordinary case hearsay evidence not objected to constitutes substantive evidence.").
Defense counsel also failed to object to Languirand's testimony regarding the significance of the PSM mark placed on the checks by the Hibernia bank teller on the numbered check (but not the unnumbered check) in terms of the bank's routine procedure for cashing checks. However, in this instance, an objection would not have availed the defense, as Languirand's testimony established the foundation for admitting the PSM mark on the check number 11600 under the firmly rooted hearsay exception for records of a regularly conducted business activity, even in the absence of a showing by the state that the tellers were unavailable to testify.
Former La.Code Evid. art. 804(B)(5) required the party offering a business record in a criminal case to establish that the declarant was unavailable to testify. The statute incorporated a jurisprudential safeguard adopted by this Court to protect the accused's Sixth Amendment right to confront and cross-examine the witnesses against him. State v. Monroe, 345 So.2d 1185, 1189-90 (La. 1977) ("In criminal trials ... the accused's constitutional rights to confront and cross-examine the witnesses against him are of paramount concern .... [U]se of the business records exception against the accused in criminal prosecutions should be limited to situations in which the person making the record is genuinely unavailable for trial ...."). *1063 However, the legislature repealed La.Code Evid. art. 804(B)(5) in 1995, La. Acts 1300, and in the same act eliminated the restriction of the business record hearsay exception in La.Code Evid. art. 803(6) to civil cases. As does its counterpart at the federal level, Fed.R.Evid. Rule 803(6), La.Code Evid. art. 803(6) now governs both civil and criminal cases and it permits the custodian of the record "or other qualified person" to establish the essential predicate that the record was "made at or near the time by, or from information transmitted by, a person with knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and keep the [record]." The offering party need not show the unavailability of the declarant as a prerequisite for introducing an otherwise properly qualified business record because the hearsay exception in La.Code Evid. art. 803(6) rests on the premise "that the out-of-court [statement] is superior to what is likely to be produced in court...." 2 McCormick on Evidence, § 252, p. 124 (4th ed., John B. Strong, ed., 1999).
We need not decide here whether as amended in 1995 La.Code Evid. art. 803(6) has altogether superceded this court's jurisprudential safeguards for introducing business records in all criminal cases. We are satisfied that in this particular case the inability of defense counsel to cross-examine the tellers did not impair respondent's right to confrontation. It is unlikely that either teller would have had an independent recollection of a single banking transaction conducted over two years before trial. The contemporaneous marks placed by the tellers on the two checks involved in the present case therefore offered the most reliable evidence of whether they had, or had not, followed the general procedure Languirand outlined in his testimony for cashing checks at the Hibernia. As the prosecutor observed in his closing argument when he explained why he had not called the tellers to testify, at the time of the transactions, "Ms. Marston was just another customer." We therefore find no particularized basis in the present case for departing from the general rule that a defendant's right to confront his accusers is satisfied if hearsay evidence "has sufficient guarantees of trustworthiness to come within a firmly rooted exception to the hearsay rule." White v. Illinois, 502 U.S. 346, 358, 112 S.Ct. 736, 743, 116 L.Ed.2d 848 (1992); see 2 McCormick on Evidence, § 252, p. 125 ("[H]earsay falling within a traditional or `firmly rooted' exception to the rule will be admissible under the Confrontation Clause. Where the exception does not require unavailability because of the theoretical superiority of the out-of-court statement, the Constitution does not require it.") (footnote omitted).
Although Languirand was not the custodian of the canceled checks for the Hibernia Bank, he was a "qualified person" within the scope of La.Code Evid. art. 803(6) by reason of his employment in the bank's security office to explain the bank's regular business procedures with regard to cashing checks. See United States v. Console, 13 F.3d 641, 657 (3rd Cir.1993) ("[A] qualified witness only need `have familiarity with the record-keeping system' and the ability to attest to the foundational requirements of [Fed.R.Evid.] Rule 803(6)." (quoting 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence, para. 803(6)(02), at 803-178)). Languirand's testimony properly qualified the PSM mark on check number 11600 as a business record and that evidence became the lynchpin of the state's case as it provided a direct and reliable contemporaneous statement by the Hibernia teller that appearance of the person presenting the stolen and forged Meier check for payment matched the photograph of respondent on her driver's license. Cf. Allien, 366 So.2d at 1311 (because prior inconsistent statements are generally not admissible in Louisiana as substantive evidence, the state may not base its case solely on testimony of two police officers admitted without objection "concerning accusatory prior statements of witnesses which [were] recanted by those same witnesses at trial").
*1064 As to check number 11600, the possibility that in this instance the business record was not inherently trustworthy because the teller did not, despite all appearances, follow routine banking procedure with regard to verifying the identity of the payee therefore went to the weight of the evidence, not its admissibility, a matter for the jury to consider in evaluating all of the evidence in the case. Given the contemporaneous record of the transaction left by the teller, and the opinion of the state's handwriting expert which constituted circumstantial evidence pointing towards respondent, not away from her, a rational trier of fact could reasonably conclude that at least with regard to check number 11600 the state's hypothesis of respondent's guilt was consistent overall with the evidence presented and that respondent's hypothesis of innocence appeared too remote to create a reasonable doubt as to her guilt. State v. Graham, 422 So.2d 123, 130 (La.1982). As Judge Kostelka observed in his dissent, the two checks and copies of respondent's driver's license were introduced into evidence for the jury's inspection, and jurors could determine for themselves whether any apparent discrepancy in the spelling of respondent's name in the endorsement on the back of check number 11600 appeared significant or represented merely an artifact of handwriting. See 4 J. Wigmore, Evidence, § 1157 (Chadborne rev.1972) (discussing autoptic proference, or things proved by the perception of the tribunal itself).
Because the state charged respondent in a single count of forgery, we have no need here to consider whether, in the absence of a PSM mark on the unnumbered check, the recording of respondent's driver's license number on the face of the check constituted a trustworthy assertion by the teller for purposes of La.Code Evid. art. 803(6) that he or she had followed routine procedure and determined that the person presented the check matched the photograph on respondent's license. Nor do we need to consider whether the other evidence in the case, including the time interval of only 12 minutes between the cashing of the two checks and the similarity in writing on the two instruments, reliably supported a finding that respondent transferred the unnumbered check as well. The state's evidence as to check number 11600 adequately supported the jury's general verdict finding respondent guilty as charged.
In sum, we conclude that the evidence introduced by the state, when viewed in a light most favorable to the prosecution, was sufficient under the Jackson v. Virginia standard to prove beyond a reasonable doubt that the defendant had committed the crime charged. Accordingly, the decision of the court of appeal is reversed, respondent's conviction and sentence are reinstated, and this case is remanded to the district court for purposes of execution of sentence.

DECREE
JUDGMENT OF THE COURT OF APPEAL REVERSED; CONVICTION AND SENTENCE REINSTATED; CASE REMANDED.