859 So.2d 863 (2003)
STATE of Louisiana
v.
Lawrence J. MATTHEWS.
No. 2001-KA-0868.
Court of Appeal of Louisiana, Fourth Circuit.
October 22, 2003.
Rehearing Denied December 10, 2003.
*866 Eddie J. Jordan, Jr., District Attorney, Julie C. Tizzard, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Mary Constance Hanes, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS SR., Judge DAVID S. GORBATY).
DAVID S. GORBATY, Judge.
The facts of the instant case are set forth in State v. Matthews, XXXX-XXXX (La. App. 4 Cir. 3/20/02), 814 So.2d 619. Earlier, this court vacated the conviction and sentence of defendant. The State of Louisiana applied for a writ of certiorari and review with the Louisiana Supreme Court, which was granted. State v. Matthews, XXXX-XXXX (La.9/19/03), 855 So.2d 740. The Supreme Court remanded the matter to this court for purposes of determining whether the evidence supported the jury's verdict on the issuing count and therefore supports the judgment of the trial court that the defendant was properly convicted of a single offense of forgery.
DISCUSSION
Forgery is defined by La. R.S. 14:72 as follows:
A. It shall be unlawful to forge, with intent to defraud, any signature to, or any part of, any writing purporting to have legal efficacy.
B. Issuing, transferring, or possessing with intent to defraud, a forged writing, known by the offender to be a forged writing, shall also constitute a violation of the provisions of this Section.
C. For purposes of this Section:
(1) Forge means the following:
(a) To alter, make, complete, execute, or authenticate any writing so that it purports:
(i) To be the act of another who did not authorize that act;
(ii) To have been executed at a time or place or in a numbered sequence other than was in fact the case; or
(iii) To be a copy of an original when no such original existed.
(b) To issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged in accordance with the meaning of Subparagraph (1)(a).
(c) To possess a writing that is forged within the meaning of Subparagraph (1)(a).
(2) Writing means the following:
(a) Printing or any other method of recording information;
(b) Money, coins, tokens, stamps, seals, credit cards, badges, and trademarks; and
(c) Symbols of value, right, privilege, or identification.
*867 By count one of the bill of information, defendant was charged with forgery by false making. By count two, on which the trial court granted the motion for post judgment verdict of acquittal, defendant was charged with forgery by false issuing or as it is known at common law, uttering.
In evaluating the sufficiency of the evidence to support a conviction, a reviewing court must determine whether, taking the evidence in a light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Additionally, [w]hen a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Captville, 448 So.2d 676, 680 (La.1984). However, jurors must rationally reject the hypothesis advanced by the defendant. While the Jackson standard of review does not permit an appellate court to substitute its own opinion for that of the trier of fact as to what has or has not been proved by the state's evidence, `the jury cannot be permitted to speculate if the evidence is such that reasonable jurors must have a reasonable doubt.' State v. Mussall, 523 So.2d 1305, 1311 (La.1988) (quoting 2 Charles Wright, Federal Practice Procedure, Criminal 2d, 467 (2d ed.1982)).
In Louisiana, a person who acts with an intent to defraud commits the crime of forgery either by falsely altering or making any writing purporting to have legal efficacy or by issuing (transferring) a forged writing with knowledge of its falsity. State v. Marston, XXXX-XXXX (La.3/16/01), 780 So.2d 1058. As discussed in our original opinion, at trial, the evidence and testimony established that the Regiscope photograph and the handwriting exemplar linked the defendant to the check at issue. The criminal intent required for forgery is the intent to defraud any person, and it suffices if the forged instrument has prejudiced or might prejudice the rights of another. State v. Satchfield, 35,631 (La.App. 2 Cir. 8/14/02), 824 So.2d 537. The specific intent required for forgery is a state of mind and need not be proved as a fact but may be inferred from the circumstances and transactions of the case. Id. We find the evidence and testimony support an inference that defendant possessed the requisite criminal intent to be convicted of issuing a forged writing.
We now address the remaining assignments of error originally urged by defendant.

ASSIGNMENT OF ERROR NO. 2:
Defendant contends the trial court erred in denying his motion to declare a mistrial. The following exchange occurred while Inspector Paulis was testifying:
Q. Can you tell us how you developed the suspect without telling us what anyone told you?
A. During the course of my investigation I developed Lawrence Matthews as a suspect in this case. With that name, Lawrence Matthews, I then took that name, ran it through the motions computer for N.O.P.D. and gleaned Mr. Mathews' name and S.I.D. number, his criminal I.D. number.
At this point defense counsel objected and moved for a mistrial. The court sustained the objection and denied the motion for mistrial, saying further, "I don't want to hear that kind of discussion. Okay?" The court then called a brief recess and reiterated to Inspector Paulis *868 that he was not to make any references to the defendant having a criminal history.
When a witness refers directly or indirectly to another crime committed or alleged to have been committed by the defendant, as to which evidence is not admissible, the defendant's remedy is a request for an admonition or a mistrial pursuant to La.C.Cr.P. art. 771. The remark or comment must constitute an unambiguous reference to other crimes. State v. Lewis, 95-0769, p. 7 (La.App. 4 Cir. 1/10/97), 687 So.2d 1056, 1060, writ denied, 97-0328 (La.6/30/97), 696 So.2d 1004. On request, the trial court shall admonish the jury to disregard such remark or comment. La.C.Cr.P. art. 771. Upon motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant of a fair trial. Id. The granting of a mistrial under La.C.Cr.P. art. 771 is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. State v. Smith, 418 So.2d 515, 522 (La.1982); State v. Allen, 94-1895, p. 9 (La.App. 4 Cir. 9/15/95), 661 So.2d 1078, 1085, writs denied, 95-2557, 95-2475, (La.2/2/96), 666 So.2d 1087. Mistrial is a drastic remedy which is only authorized where substantial prejudice will otherwise result to the defendant. Id. The determination of whether prejudice has resulted lies within the sound discretion of the trial court. State v. Banks, 96-2227, p. 2 (La.4/18/97), 692 So.2d 1051, 1053. A trial court's ruling on whether or not to grant a mistrial because of comment by a police officer referring to other crimes evidence should not be disturbed absent a clear abuse of discretion. State v. Nicholson, 96-2110, p. 13 (La.App. 4 Cir. 11/26/97), 703 So.2d 173, 180, State v. Manuel, 94-0087, 94-0088, p. 4 (La.App. 4 Cir. 11/30/94), 646 So.2d 489, 491. "Errors are harmless unless the reviewing court is thoroughly convinced that the remarks inflamed the jury and contributed to the verdict." State v. Nicholson, supra, citing State v. Byrne, 483 So.2d 564 (La.1986), cert. denied, Byrne v. Louisiana, 479 U.S. 871, 107 S.Ct. 243, 93 L.Ed.2d 168 (1986).
State v. Finch, 97-2060 pp. 9-10 (La.App. 4 Cir. 2/24/99), 730 So.2d 1020, 1025-1026.
In the present case, the officer's remark was not a specific reference to a previous conviction or arrest and was made without elaboration. The decision not to grant a mistrial was well within the trial judge's discretion.
Defendant contends further that the trial court erred in not issuing an admonition to the jury. However, the record does not reflect that an admonition was requested. In State v. Tribbet, 415 So.2d 182 (La.1982), the Louisiana Supreme Court in examining La.C.Cr.P. art. 771 stated:
As for the trial judge's failure to admonish the jury after the officer's statement, it is evident that C.Cr.P. art. 771 mandates a request for an admonishment. As a result, the judge's failure to instruct the jury to disregard the allegedly prejudicial reply, absent a request, was not, in itself, reversible error. State v. Williams, 375 So.2d 364 (La.1979); State v. Lee, 340 So.2d 180 (La.1976). Further, a review of the testimony reveals that the officer's statement was nothing more than an obscure reference to other crimes and was made without explanation or elaboration. An admonition by the trial judge in the present case would have brought the other crimes issue to the jury's attention. Considering the innocuous nature of the officer's answers, it is our opinion that *869 the trial judge, by not instructing the jury, probably followed a better course of action. In any event, the defendant was not prejudiced by the officer's statement.
Id. at 185.
The trial judge's failure to instruct the jury to disregard the Inspector Paulis's remark was not error.

ASSIGNMENT OF ERROR NUMBER 3:
Defendant contends he received an excessive sentence. The sentence imposed by the trial court related to the defendant's conviction of false making. We have vacated that conviction and the corresponding sentence. We therefore remand this matter to the trial court for sentencing on the false issuing count.

PRO SE SUPPLEMENTAL ASSIGNMENT OF ERROR NO. 4:
Defendant reiterates the conclusion of his counseled assignment of error number one that the evidence was insufficient to establish the crime of false making. As discussed in the original opinion in this matter, defendant's contention is correct.
Defendant contends further that this court cannot sustain the conviction by reversing the post verdict judgment of acquittal. The state did not notice an appeal when the trial court granted the post verdict judgment of acquittal, nor does it contend here that the trial court erred in granting the motion. The state simply contends that the evidence was sufficient to prove the crime charged. As such, the false issuing count has not specifically been appealed, and ordinarily would not be considered by this court. However, this court has been specifically ordered to consider this issue by the Louisiana Supreme Court, so we do so here in compliance with that direct order.

PRO SE SUPPLEMENTAL ASSIGNMENT OF ERROR NO. 5:
Defendant contends the jury did not reflect a fair cross section of the community. The record reflects that after the jury had been selected, defense counsel raised an oral motion to quash on the basis of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Counsel argued that the jury's composition did not reflect the racial composition of Orleans Parish. Of the six jurors selected five were white. The record reflects that the jury venire consisted of 12 black jurors and 13 white jurors. The first panel to be seated for selection consisted of nine white jurors and four black jurors. Counsel argued vaguely that there was a problem with the system in which jurors are randomly selected to be seated for voir dire.
In the first instance, defendant does not allege that the state peremptorily excused jurors because of their race; accordingly, counsel's reference to Batson was misplaced.
In State v. Lee, 559 So.2d 1310, 1313-1314 (La.1990), the Louisiana Supreme Court reviewed the jurisprudence of a claim of underepresentation of a minority in the jury venire as follows:
A general jury venire "shall not be set aside for any reason unless fraud has been practiced, some great wrong committed that would work irreparable injury to the defendant, or unless persons were systematically excluded from the venires solely upon the basis of race." La.C.Cr.P. art. 419(A). The defendant bears the burden of proving the grounds for setting aside the venire. State v. Liner, 397 So.2d 506 (La.1981); State v. Manning, 380 So.2d 54 (La.1980). That burden of proof requires that the defendant show more than the underrepresentation of blacks on the petit jury *870 venire in order to prove a systematic exclusion of blacks. Manning, supra; State v. Anderson, 315 So.2d 266 (La. 1975). The law requires that there must not be a systematic exclusion of blacks in the source or sources from which jury venires are chosen. However, that does not mean that a defendant is entitled to a petit jury which reflects the population of the community in every respect. "Defendants are not entitled to a jury of any particular composition." Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); State v. George, 371 So.2d 762 (La.1979). In fact, a jury comprising a complete representation of the various groups within the community would be virtually impossible to seat. State v. Cage, 337 So.2d 1123 (La.1976).
In State v. Melancon, 563 So.2d 913, 914 (La.App. 3 Cir.1990), the court addressed a claim similar to that asserted here as follows:
In the case sub judice, it is undisputed that the 200 persons in the petit jury venire were selected at random by a computer. After several persons were excused from jury service, the clerk pulled twelve names at random from the jury box, and continued accordingly until a twelve-person jury was selected. During voir dire, the State successfully challenged two jurors for cause but did not peremptorily challenge any jurors. The defendant successfully challenged two jurors for cause and peremptorily challenged five jurors. Although the petit jury venire was approximately 5% to 10% black, no blacks were selected for voir dire. After an all white jury was selected, accepted and sworn in, the defendant filed a motion to quash the petit jury venire on the basis that it did not contain a representative cross-section of the community. According to the defendant, this forced him "to go to trial with an all white jury."
In State v. Kirts, 447 So.2d 1 (La. App. 3rd Cir.1983), writ not considered, 464 So.2d 306 (La.1985), this court addressed and rejected the same argument defendant asserts in the case sub judice. In Kirts, defense counsel filed a motion to quash the petit jury venire on the morning of trial, contending that the petit jury venire was racially imbalanced. Although no allegation of discrimination was offered for the racial imbalance, counsel for defendant asserted that a newly drawn venire, representative of a crosssection of the community, was necessary to assure that defendant would be judged by a fair and impartial jury. On appeal from the trial court's refusal to grant the motion to quash, we rejected Kirts' argument. We held that the defendant failed to make a prima facie showing of discrimination where there are no allegations of fraud, and the record is devoid of any indications of such, or that some great wrong was committed that would work irreparable injury to him. Id., 447 So.2d at 3.
In the case sub judice, defendant asserts that he was prejudiced by the petit jury venire. We disagree. At the argument of the motion to quash, defense counsel stated that he was not alleging fraud, and offered no evidence of discrimination or irreparable injury attributable to the petit jury venire. Therefore, based on a careful examination of the record, we find that the trial court properly denied defendant's motion to quash the petit jury venire, finding that defendant failed to make a prima facie showing of discrimination. State v. Kirts, supra. Defendant's assignment of error is without merit.
For the reasons discussed in State v. Melancon, defendant's assignment of error *871 is without merit. A defendant will not be heard to complain unless he can show that the exclusion of black persons from the venire was not a nondiscriminatory, random process. State v. Bourque, 622 So.2d 198 (La.1993).

PRO SE SUPPLEMENTAL ASSIGNMENT OF ERROR NO. 6:
Defendant contends he was prejudiced by the introduction of other crimes evidence when Inspector Paulis testified concerning how he obtained defendant's photograph. As discussed in assignment of error number two, although regrettable, the allusion to a previous criminal history is insufficient to warrant reversal on that basis.

PRO SE SUPPLEMENTAL ASSIGNMENT OF ERROR NO. 7:
As in assignment of error number two, defendant contends he was denied a fair trial through the introduction of other crimes evidence. Defendant references the following testimony of Inspector Paulis:
In 1999 as a federal agent I was investigating mail theft wherein they were taking mail, deleting the account numbers off the mail, creating counterfeit checks with it. Some of the counterfeit checks were cashed using counterfeit driver's licenses. Many of the checks were cashed, the counterfeit checks, at the Bermuda Supermarket in Algiers. When I found this out, I went down to the Bermuda Supermarket in Algiers to retrieve the original counterfeit checks that got returned from the bank to the Bermuda Supermarket.
The record does not reflect that defendant objected to the foregoing testimony; accordingly the issue has not been preserved for appeal.
Defendant further contends that the states reference in its opening statement to the nature of Inspector Paulis's investigation was an impermissible reference to other crimes. The prosecutor stated, "The postal inspector, Mike Paulis, was doing an investigation into mail theft, fraud, forgery, counterfeits." Because defendant did not object to the foregoing, the issue has not been preserved for appeal. C.Cr.P. art. 841.
Defendant contends further that he was prejudiced by the introduction of what defendant refers to as a "mug shot-rapsheet." The record reflects that the state sought to introduce the photograph of defendant, which Inspector Paulis had obtained.[1] Apparently the photograph also presented some gratuitous information which referenced a prior arrest or arrest history. Defense counsel brought this concern to the court's attention. It appears that the state had covered over the offending portion and the court requested that the part be cut off. No further objection is mentioned. If it were the case that the photograph was not altered as the court requested, it was incumbent on counsel to object at the time the photograph was utilized or at the time it was introduced, which was not the case. The assignment of error lacks merit.

PRO SE SUPPLEMENTAL ASSIGNMENT OF ERROR NO. 8:
Defendant contends the trial court erred in qualifying Officer Chana Pichon as an expert in handwriting analysis. Defendant *872 argued that handwriting analysis failed to meet the criteria of set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
The general rule for the admissibility of expert testimony is stated in La.Code of Evidence art. 702 which provides:
Art. 702. Testimony by experts
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
This codal article is based on Federal Rules of Evidence 702. In Daubert, the Court discussed the procedure a trial judge must use in determining whether an expert may testify to scientific knowledge that would assist the trier of fact to understand or determine a fact in issue. The Court noted: "This [determination] entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 592-593, 113 S.Ct. at 2796. The Court stated that the inquiry envisioned by Rule 702 is flexible, but "the overarching (sic) subject is the scientific validityand thus the evidentiary relevance and reliabilityof the principles that underlie a proposed submission." Id. at 595-596, 113 S.Ct. at 2797. The factors which the Court set forth making this determination included testing, peer review, error rates, and acceptability in the relevant scientific community.
In State v. Foret, 628 So.2d 1116 (La. 1993) the Court, noting that La. C.E. art. 702 is virtually identical to its source provision in the Federal Rules of Evidence, F.R.E. 702, adopted the standard of admissibility for determining reliability of scientific evidence that was set forth in Daubert. In so doing the Court noted that subsumed in the requirements of Rule 702 is the premise that expert testimony must be reliable to be admissible. Additionally, in Foret the Court noted that the standard for determining whether scientific testimony was admissible requires the trial court to act in a "gatekeeping" function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Foret, 628 So.2d at 1122.
Daubert left open the issue of whether its standards would apply to experts who are not scientists but rather who have technical skills which could aid the jury. In Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the Court held that the "gatekeeping" function of Daubert also applies in cases involving expert testimony concerning technical knowledge. The Court stated:
We conclude that Daubert's general holdingsetting forth the trial judge's general "gatekeeping" obligationapplies not only to testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge. See Fed. Rule Evid. 702. We also conclude that a trial court may consider one or more of the more specific factors that Daubert mentioned when doing so will help determine that testimony's reliability. But, as the Court stated in Daubert, the test of reliability is "flexible," and Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination. See *873 General Electric Co. v. Joiner, 522 U.S. 136, 143, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) (courts of appeals are to apply "abuse of discretion" standard when reviewing district court's reliability determination). (Emphasis supplied)
Id. at 141-142, 119 S.Ct. at 1171. The Court noted that the list of factors in Daubert "was made to be helpful, not definitive. Indeed, those factors do not all necessarily apply even in every instance in which the reliability of scientific testimony is challenged." Id. at 149, 119 S.Ct. at 1175. The Court further held that while a trial court must have "considerable leeway" in deciding in each case the method it must use to determine the reliability of expert testimony, it should use the Daubert factors "where they are reasonable measures of the reliability of expert testimony." Id. at 151, 119 S.Ct. at 1176. The Court held that the appellate court must use an "abuse of discretion" standard in reviewing a trial court's decision of how to determine reliability as well as its ultimate determination of reliability or unreliability. "Thus, whether Daubert's specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." Id. at 151, 119 S.Ct. at 1176.
In denying the motion the trial court stated
I do recognize, based on my experience as a lawyerpracticing lawyer and as a judge, that there are people who receive training, knowledge, and certain experience in the filed of an analysis of handwriting.
I also understand through readings that each person has a different handwriting, a different style whereby he or she makes letters and/or numbers. And that style is peculiar or typical to the individual involved who is the author of a particular document.
* * *
It's not general knowledge. In fact, it requires someone with some special training to get up and explain to a jury how the formation of the letters and/or numbers is peculiar to individuals and their style of writing.
In U.S. v. Velasquez, 64 F.3d 844 (3d Cir.1995), the court found that the field of handwriting analysis consists of "`scientific, technical or other specialized knowledge' properly the subject of expert testimony" under the Daubert criteria. Id. at 850. The trial court did not abuse its discretion in allowing the handwriting analysis testimony.

PRO SE SUPPLEMENTAL ASSIGNMENT OF ERROR NO. 9:
Defendant contends the state illegally procured his handwriting specimen. Although conceding that the issue was not raised prior to trial, defendant nonetheless contends that this issue has been preserved for review, because it was raised at the hearing on the motion for new trial. The argument has no merit. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. C.Cr.P. art. 841. See also State v. Moody, XXXX-XXXX (La.App. 1 Cir. 12/22/00), 779 So.2d 4.

PRO SE SUPPLEMENTAL ASSIGNMENT OF ERROR NO. 10:
Defendant contends he was denied the right of compulsory process when his witness was arrested while waiting to testify. It appears that defendant's witness, Lloyd Thomas, was arrested on an outstanding warrant while waiting in the hall *874 on the day of trial. The trial court was informed of the occurrence, and Thomas was returned to court shortly after arriving at central lockup. However, at the conclusion of the state's case the defense rested without calling the witness. Apparently, after being returned to court, Thomas spoke to defendant's trial counsel, who on the basis of their discussion, declined to put Thomas on the stand.
Thomas's testimony at the motion for new trial was that he was aware of a subject known as "Tapp" who closely resembled the defendant in physical appearance and that this subject let it be known in the neighborhood that he could obtain driver's licenses and state I.D.'s for those who needed them. Thomas related that he had not informed defendant's trial counsel, Joseph Meyer, of this fact. Thomas explained that he was shaken up from being arrested. However, responding to questions by the trial court, Thomas related that he had been arrested six or seven times on prior occasions.
Thomas also testified that he was with the defendant on the day question. He related that the two went to a concert that night and that Lawrence had been at his house for the entire day. Thomas's mother is the defendant's girlfriend.
Mr. Meyer testified that although Thomas had informed him that he was with the defendant on the day in question he could not provide him with information from which he could gather a reasonable belief that he could remember that specific date after some seventeen months had passed.
The trial court denied the motion for new trial on the basis of Thomas' testimony, saying that he found his testimony "incredible, not worthy of belief" and that "quite frankly, [he did not] believe his testimony." The court also expressed the opinion that he felt the witnesses' testimony concerning being upset by being arrested was "contrived by him."
Based on the trial court's review of the witness's testimony, and the fact that the witness was available to testify, defendant cannot establish that his constitutional right to compulsory process was denied.

PRO SE SUPPLEMENTAL ASSIGNMENT OF ERROR NO. 11:
Defendant contends that he received ineffective assistance of counsel. Specifically, defendant contends his counsel was ineffective in the following respects;
1. Failing to challenge the legality of the handwriting exemplar.
2. Failing to implement the necessary motion to remedy the negative effects of the arrest of Lloyd Thomas.
3. Failing to thoroughly prepare Thomas and call him as a witness.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Reed, 483 So.2d 1278 (La.App. 4 Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Garland, 482 So.2d 133 (La.App. 4 Cir. 1986).
A defendant's claim of ineffective assistance of counsel is to be assessed by a twopart test: the defendant must show that counsel's performance was deficient and that the deficiency prejudiced defendant. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). Counsel's performance is ineffective when *875 it can be shown that he made errors so serious that counsel was not functioning as the counsel guaranteed to the defendant by the Sixth Amendment. Strickland, 466 U.S. at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 693, 104 S.Ct. at 2068. If an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel" State v. Bienemy, 483 So.2d 1105 (La.App. 4 Cir.1986).
Handwriting Exemplar:
The exact details of the circumstances surrounding the taking of defendant's handwriting exemplar are somewhat unclear. Only the defendant's version of the events was presented. The record reflects that the state's motion and order to obtain handwriting specimen was signed by a magistrate judge on June 20, 2000. A bail order was signed the same day, and defendant did not appear at several hearing dates. No capias was issued, as it appears defendant was not served. At the motion for new trial defendant related that Detective Lauman appeared at his house and at gun point took him to the second district police station to complete the handwriting exemplar.
It has long been held that the compelled display of identifiable physical characteristics infringes no interests protected by the constitutional privilege against compulsory self-incrimination. In the case of Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the United States Supreme Court held that evidence of analysis of petitioner's blood taken over his objection was not inadmissible on the ground that it violated defendant's privilege against self-incrimination. There the Court stated:
"It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers. On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling `communications' or `testimony,' but that compulsion which makes a suspect or accused the source of `real or physical evidence' does not violate it." 384 U.S. at 763-64, 86 S.Ct. at 1832. (citations omitted) (emphasis added)
This distinction between an act which communicates and an act which merely makes an accused's physical characteristics the subject of evidence has been consistently applied in fifth amendment analysis. In Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), the United States Supreme Court held that the state's taking of a handwriting exemplar did not violate the accused's fifth amendment privilege. The Court stated that:
"One's voice and handwriting are, of course, means of communication. It by no means follows, however, that every *876 compulsion of an accused to use his voice or write compels a communication within the cover of the privilege. A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside its protection.... No claim is made that the content of the exemplars was testimonial or communicative matter." 388 U.S. at 266-67, 87 S.Ct. at 1953. (emphasis added)
State v. Tillett, 351 So.2d 1153, 1155-1156 (La.1977).
Although the circumstances under which defendant provided the handwriting exemplar are somewhat unusual, defendant does not suggest how his constitutional rights were violated. He presents no argument that his counsel could have pursued in seeking to suppress the exemplar.
Lloyd Thomas:
With regard to defendant's second claim he does not suggest what motion counsel could have brought to "remedy the negative effects of the arrest of Lloyd Thomas." Accordingly, there is no merit to this claim.
With regard to the claim that counsel failed to "thoroughly prepare" Lloyd Thomas, there is little in the record by which this court could properly assess the claim. As to the decision not to call Thomas, it appears that was clearly a case of trial strategy. Counsel met with Thomas, and from his discussion he did not believe that Thomas's testimony would benefit defendant.
Defendant fails to satisfy the requirements of Strickland to establish an ineffective assistance claim.

PRO SE SUPPLEMENTAL ASSIGNMENT OF ERROR NO. 12:[2]
In this assignment defendant reiterates the same issues and arguments brought in his assignment of error number four.

PRO SE SUPPLEMENTAL ASSIGNMENT OF ERROR NO. 13:
Defendant contends his sentence is invalid because it rests on an invalid indictment, verdict, and conviction. As discussed earlier, we vacated defendant's sentence, so this assignment of error is moot.

PRO SE AMENDMENT TO ASSIGNMENT OF ERROR NO. 1:
Defendant contends that the B.O.F.I. photograph which Inspector Paulis used to compare to the "Regiscope photograph" was not properly authenticated as being a photograph of the defendant. Because defendant failed to object to the photograph prior to its introduction on this basis, the claim was not preserved. Furthermore, defendant contends that the state's case rested on a comparison of the "Regiscope photograph" to the B.O.F.I. photograph. The argument is misplaced as the question for the jury was whether the "Regiscope photograph" was a picture of the defendant and he was present in court for the jury to draw their own conclusion.
CONCLUSION
In the present case, we find that a rational trier of fact could have reasonably found the defendant guilty of issuing the forged check. Further, we find no merit to any of the defendants remaining assignments of error. Accordingly, for the *877 foregoing reasons, we affirm the judgment of the trial court that the defendant was properly convicted of a single offense of forgery. We remand this matter to the trial court for sentencing on the false issuing conviction.
CONVICTION AFFIRMED; REMANDED FOR SENTENCING.
JONES, J., concurs in result.
NOTES
[1] Apparently, the state sought to introduce the photograph because defendant's appearance was altered between his arrest and trial.
[2] On September 10, 2001, defendant filed a pleading entitled "Pro Se Memorandum," which is treated here as his assignment of error number eleven.