928 So.2d 633 (2006)
STATE of Louisiana
v.
Daniel BONIT.
No. 2005 KA 0795.
Court of Appeal of Louisiana, First Circuit.
February 10, 2006.
*635 J. Phil Haney, District Attorney, Franklin, for the State of Louisiana.
Holli Herrle-Castillo, Marrero, for Defendant/Appellee, Daniel F. Bonit.
Before: CARTER, C.J., DOWNING and GAIDRY, JJ.
CARTER, C.J.
The defendant, Daniel Bonit, was charged by bill of information with one count of armed robbery, a violation of LSA-R.S. 14:64, and with using a firearm during the commission of an armed robbery, a violation of LSA-R.S. 14:64.3.[1] He pled not guilty. Following a jury trial, he was found guilty of armed robbery, with the jury also finding that he had used a firearm during the commission of an armed robbery. Thereafter, the State filed a habitual offender bill of information against the defendant, alleging he was a second felony habitual offender.[2] He was sentenced to forty years at hard labor without benefit of parole, probation, or suspension of sentence and an additional five years at hard labor without benefit of parole, probation, or suspension of sentence to run consecutive to the forty-year sentence. Following a habitual offender hearing, he was adjudged a second felony habitual offender, the prior sentence imposed *636 was vacated, and he was sentenced to sixty-five years at hard labor without benefit of parole, probation, or suspension of sentence and an additional five years to run consecutive to the sixty-five year sentence. He now appeals, designating three assignments of error. We affirm the conviction, the habitual offender adjudication, and the sentence.

FACTS
The victim, Keith Hebert, managed a combination Cracker Barrel/Church's fried chicken store in Patterson, Louisiana. The defendant was a former cook at the Church's fried chicken store.
On August 20, 2003, the victim attempted to make a deposit of approximately $4,500 at his local branch of the Whitney Bank. He parked his vehicle and walked towards the bank with a bag containing the deposit money. Before he reached the bank building, however, he heard someone saying, "[H]ey, hey." The victim also saw the person's reflection on the glass of the bank building as the person came up behind him. When the victim turned around, the robber was pointing a revolver at him. The robber took the deposit money from the victim and fled in a car with another person. The victim was unable to identify the robber because he wore gloves, sunglasses, a mask, and a coat with a hood that covered his head.
On August 20, 2003, at approximately 9:50 a.m., Pamela Taylor, an employee of Missy's Supermarket located near the Whitney Bank, saw a man wearing a ski mask and carrying a bag of money get into a champagne colored Grand Am, which then drove away quickly. Taylor followed the vehicle for a short while, but lost sight of it in Bayou Vista.
Patterson Police Department Detective Gary Stevenson testified at trial that a gray colored (Pontiac) Grand Am was visible on the surveillance videotape of the robbery.
Donald Nicholas, III, also testified at trial. He was serving a fifteen-year sentence for driving the vehicle used in the robbery. He indicated the defendant had been the gunman in the robbery.
William Christopher Closson had a conversation with the defendant on August 19, 2003, the day before the robbery. The defendant indicated to Closson he was going to rob the store and "throw out the dude at the bank."
Ashley Nichole Rebardi of Pro Auto Sales and Rentals rented a silver Pontiac Grand Am to the defendant on August 19, 2003. The vehicle was supposed to be returned on August 21, 2003. The defendant, however, returned the vehicle at approximately 11:20 a.m. on August 20, 2003. It had broken glass on the driver's side, and the defendant paid for the damage with cash.
On August 20, 2003, in a statement to Detective Stevenson, the defendant stated that he, Donald Nicholas, and William Closson had gathered together previously to "rob the store." The defendant claimed he was disappointed with how much money he was earning at Church's chicken and was trying to get extra money to take care of his kids. On that earlier occasion, the defendant had rented the car to be used in the robbery, but when the men got to the bank to commit the robbery, the deposit had already been made, so they decided to commit the robbery another time.
In regard to the instant offense, on August 20, 2003, the defendant stated that he had been the driver and Donald Nicholas had been the gunman during the robbery. In a statement given to Detective Stevenson on August 25, 2003, however, the defendant confessed that he had been the gunman and Nicholas had been the driver *637 during the robbery. He stated that the window on the rental car was damaged while he was lying on the back seat of the vehicle waiting for someone from Cracker Barrel to arrive at the bank with the store's deposit. The defendant accidentally fired his gun while looking to see if anyone had arrived with the deposit.
The police recovered $3,982 in cash and a .38 caliber revolver from the Plantation Inn, room 116, in Bayou Vista. The key to the motel room was recovered from the defendant's pocket.

MOTION TO HIRE PRIVATE COUNSEL; MOTION FOR SELF-REPRESENTATION
In assignment of error number 1, the defendant contends the trial court erred in denying his motion to hire private counsel. In the alternative, the defendant contends the trial court erred in failing to allow him to represent himself.
At each stage of the proceedings, every person is entitled to assistance of counsel of his choice or to counsel appointed by the court if he is indigent and charged with an offense punishable by imprisonment. LSA-Const. art. I, § 13. The Sixth Amendment to the United States Constitution likewise carries such a guarantee. Although the Sixth Amendment primarily guarantees the right to effective counsel, it also includes the right to select and be represented by counsel of choice. However, a criminal defendant's right to the counsel of his choice is not absolute. State v. Brown, 03-0897 (La.4/12/05), 907 So.2d 1, 11-12.
An indigent defendant does not have the right to have a particular attorney appointed to represent him. An indigent's right to choose his counsel only extends so far as to allow the accused to retain the attorney of his choice, if he can manage to do so, but that right is not absolute and cannot be manipulated so as to obstruct orderly procedure in courts and cannot be used to thwart the administration of justice. Brown, 907 So.2d at 12.
Both the Louisiana and United States Constitutions guarantee a criminal defendant's right to the assistance of counsel. Nevertheless, a defendant may elect to represent himself if the choice is "knowingly and intelligently made" and the assertion of the right is "clear and unequivocal." U.S. Const. amend. VI; LSA-Const. art. I, § 13; Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975); Brown, 907 So.2d at 21-22.
In Faretta, the United States Supreme Court recognized that a trial court may not force a lawyer upon a defendant when the defendant insists he wants to conduct his own defense and voluntarily and intelligently elects to proceed without counsel. However, he must ask clearly and unequivocally to proceed pro se and he must also make his request in a timely manner. Faretta, 95 S.Ct. at 2541. Further, a defendant must be made aware of the dangers and disadvantages of self-representation so that the record demonstrates that "`he knows what he is doing and his choice is made with his eyes open."' Id., 95 S.Ct. at 2541 (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)). Faretta made clear that the accused's "technical legal knowledge, as such, [is] not relevant to an assessment of his knowing exercise of the right to defend himself." Id., 95 S.Ct. at 2541. In State v. Santos, the Louisiana Supreme Court held that where a trial judge is confronted with an accused's unequivocal request to represent himself, the judge need determine only whether the accused is competent to waive counsel and *638 is "voluntarily exercising his informed free will." State v. Santos, 99-1897 (La.9/15/00), 770 So.2d 319, 321 (quoting Faretta, 95 S.Ct. at 2541); Brown, 907 So.2d at 22.
In McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), the United States Supreme Court confirmed the right of a criminal defendant to represent him or herself pro se while allowing the trial court to appoint standby counsel "to explain and enforce basic rules of courtroom protocol." McKaskle, 104 S.Ct. at 954. The Court further found that standby counsel may participate in the trial as long as his or her participation does not "seriously [undermine the defendant's] appearance before the jury in the status of one representing himself." Id., 104 S.Ct. at 956. Brown, 907 So.2d at 22.
The defendant was arrested for the instant offense on August 20, 2003. He was officially charged by bill of information filed September 22, 2003. At his arraignment on October 22, 2003, he was advised of his right to an attorney, either retained or, if he could not afford to retain an attorney, court-appointed, and informed the court that he had no attorney, no funds with which to hire an attorney, and desired a court-appointed attorney. The court referred the case to the indigent defender for the appointment of counsel, and attorney Gregory P. Aucoin of the indigent defender's office stood with the defendant for arraignment. Following arraignment and prior to voir dire, Aucoin appeared in court on behalf of the defendant on January 12, 2004 (pre-trial conference), February 27, 2004 (motion to suppress), and March 4, 2004 (State's motion for pre-trial determination of admissibility of the defendant's statement).
On April 19, 2004, the defendant filed a pro se motion to dismiss counsel. In the motion, the defendant alleged the indigent defender's office represented both him and his co-conspirator, Donald Nicholas, who would be a witness against the defendant.[3]
Aucoin also appeared on behalf of the defendant for voir dire on April 26, 2004. Outside of the presence of the prospective jurors, the defendant advised the court that he had not heard anything concerning his motion to dismiss counsel. The court offered the State and defense counsel an opportunity to respond to the motion. The State indicated Nicholas was in another section of court, was represented by a different attorney assigned by the indigent defender, and had already pled guilty. Aucoin indicated he had had no dealings with Nicholas's attorney (Colwart) concerning Nicholas's case, had not seen Nicholas's file, and did not share an office with Colwart. Aucoin did not know whether or not Colwart had access to the defendant's file in the indigent defender's office. The court indicated that it had had no dealings whatsoever with the case against Nicholas and had had no contact with Colwart. The court found there was no conflict of interest and denied the motion to dismiss counsel.
The defendant then stated he desired to hire his own attorney.
The court stated the defendant had had an opportunity to hire his own counsel, now it was the day for trial, and the defendant had waited too long to move to hire his own attorney.
The defendant then stated:
Well, what about representing myself, I would have to be given enough time to look over my papers and get myself prepared for that. I don't think he's *639 doing me any help. He's doing more harm than help being on my case.
The court told the defendant it would not continue his case because everything was in place to conduct the jury trial the defendant had requested.
The court stated it was trial day, the defendant had always had a right to hire his own lawyer, but chose not to do so, and thus, the indigent defender had been appointed to represent him. The court reiterated it was not going to dismiss the indigent defender from representing the defendant. The court advised the defendant that he also had the right to represent himself, but if he chose to do that, the court would need to ask him some questions concerning his ability to represent himself.
The defendant asked if he could "at least" act as co-counsel for himself with the right to "speak up and cross-exam everything." The court asked the defendant if he was trained as a lawyer, and the defendant indicated he was not. The defendant also indicated he had never studied the law or criminal procedure. The court advised the defendant he had to conduct himself properly in court; he had a right to represent himself, to call witnesses to testify on his behalf, and to ask those witnesses questions; the district attorney would follow the rules of criminal procedure and evidence, and the defendant would also be expected to follow those rules; if the defendant attempted to do something the district attorney felt was improper under the rules of law, evidence, or procedure, he would object, and if the court agreed, that objection would be sustained; by the same token, if the district attorney failed to comply with the rules of evidence or procedure, and the defense objected, then the court would rule. The court pointed out to the defendant, however, the gentlemen with the district attorney's office had been prosecuting cases for quite some time and knew the rules, while he did not.
The court advised the defendant that if he chose to represent himself he would be permitted to do so, but would have to follow rules he really did not know; and Aucoin, through the indigent defender, would be appointed to assist him during trial and would be available to him to advise him on the rules of evidence, procedure, and law. The court cautioned the defendant, however, that generally speaking, persons who were unfamiliar with the law, criminal law, procedure and evidence, did themselves a disservice by representing themselves, but the decision was his to make.
The defendant responded, "I'm not quite sure I want to do that right now."
The court recommended to the defendant that Aucoin represent him, and as the case progressed, that the defendant discuss issues with him. The defendant thanked the court.
The trial court correctly denied the motion to hire private counsel. The day of trial was too late of a stage for the defendant to assert his right to hire private counsel. Granting of the motion would have obstructed the orderly procedure of the trial court. There was also no error in the trial court's alleged failure to permit the defendant to represent himself. The defendant's request to represent himself was not clear and unequivocal. After the court duly advised the defendant of the dangers and disadvantages of self-representation, he withdrew his request to represent himself.
This assignment of error is without merit.

REGISTRATION INVOICE FROM THE PLANTATION INN
In assignment of error number 2, the defendant contends the court erred in *640 admitting the registration invoice from the Plantation Inn. He argues Detective Washington had no personal knowledge as to who filled out the document and did not observe the person allegedly logging the defendant as the renter of room 116.
LSA-C.E. art. 803 provides:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
. . .
(6) Records of regularly conducted business activity. A memorandum, report, record, or data compilation, in any form, including but not limited to that which is stored by the use of an optical disk imaging system, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and to keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method of circumstances of preparation indicate lack of trustworthiness. This exception is inapplicable unless the recorded information was furnished to the business either by a person who was routinely acting for the business in reporting the information or in circumstances under which the statement would not be excluded by the hearsay rule. The term "business" as used in this Paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit. Public records and reports which are specifically excluded from the public records exception by Article 803(8)(b) shall not qualify as an exception to the hearsay rule under this Paragraph.
To be admitted under a business records exception, the person who actually prepared the documents need not have testified, so long as other circumstantial evidence and testimony suggests their trustworthiness. State v. Smith, 04-0800 (La.App. 1 Cir. 12/17/04), 897 So.2d 710, 715-16. Even so, the language of LSA-C.E. art. 803(6) establishes criteria that must be met before evidence can be admitted under this hearsay exception. Smith, 897 So.2d at 716.
Patterson Police Department Detective Rogers Washington testified at trial. He indicated he was able to ascertain that the defendant had rented Plantation Inn, room 116 on August 19 and August 20, 2003. He also indicated he was able to ascertain certain documents kept in the normal course of business at Plantation Inn identifying the defendant as the renter of room 116. When the State attempted to show Detective Washington State Exhibit 11, the defense objected on the basis of inadequate foundation. The State indicated the registration at issue was a business record of Plantation Inn. The trial court overruled the objection, citing the fact that there had been a lot of testimony that the defendant was registered.
State Exhibit # 11 was a computerized invoice/receipt for Plantation Inn, room 116, reflecting that the defendant had paid rental on room 116 on August 19 and August 20, 2003. The invoice was not properly admitted into evidence under LSA-C.E. art. 803(6). No witness with personal knowledge testified as to how State Exhibit # 11 was generated or that it was identical to the record contained in the computer. See Smith, 897 So.2d at 716.
*641 However, error in the admission of State Exhibit # 11 was harmless in this case. Confrontation errors are subject to a harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986). The correct inquiry is whether the reviewing court, assuming that the damaging potential of the cross-examination were fully realized, is nonetheless convinced that the error was harmless beyond a reasonable doubt. Van Arsdall, 106 S.Ct. at 1438. Factors to be considered by the reviewing court include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." Van Arsdall, 106 S.Ct. at 1438; State v. Wille, 559 So.2d 1321, 1332 (La.1990), cert. denied, 506 U.S. 880, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992). The verdict may stand if the reviewing court determines that the guilty verdict rendered in the particular trial is surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993); State v. Broadway, 96-2659 (La.10/19/99), 753 So.2d 801, 817, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000).
State Exhibit # 11 was cumulative of other evidence at trial in the strong case against the defendant. In his confession, the defendant indicated he went back to Plantation Inn, room 116 after renting the car to be used in the robbery and returned to the Plantation Inn after the robbery. Detective Washington identified State Exhibit # 25 as the weekly rates from Pro Auto Sales. That exhibit included a copy of the defendant's driver's license and indicated his room number was "116." Donald Nicholas, III, the driver of the car used in the robbery, indicated that he and the defendant went back to the Plantation Inn after the robbery and after he (Nicholas) had picked up the defendant in a cab after the defendant returned the car to the car rental place. Florita Webb, a dispatcher at Pat's Cab, indicated that on August 20, 2003, there was a call from Plantation Inn, room 116, to pick someone up at Pro Auto Sales. Before the taxicab driver left Pro Auto Sales, she indicated she also had someone else and was returning to Plantation Inn. Patterson Police Department Sergeant James Carinhas identified State Exhibit # 21 as the key to Plantation Inn, room 116, taken from the defendant's person by Officer Declouet. Patterson Police Department Officer Daniel Paul Declouet indicated, on August 20, 2003, he was involved in the investigation of the armed robbery, and that investigation led to Plantation Inn, room 116. At Plantation Inn, room 116, Officer Declouet arrested the defendant and recovered the key to Plantation Inn, room 116, from the defendant's pocket. Accordingly, the guilty verdict rendered in this particular trial was surely unattributable to the error in the admission of State Exhibit # 11.
This assignment of error is without merit.

LEGALITY OF SENTENCE
In assignment of error number 3, the defendant contends the trial court imposed an illegal sentence. He argues the applicable sentence under the habitual offender law replaces the sentence for the underlying crime under LSA-R.S. 14:64 and LSA-R.S. 14:64.3, citing State v. White, 39,634 (La.App. 2 Cir. 6/16/05), 907 So.2d 180.
LSAR.S. 14:64 provides:
A. Armed robbery is the taking of anything of value belonging to another *642 from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
B. Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.
LSAR.S. 14:64.3, in pertinent part, provides:
A. When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.
The defendant in White was convicted of armed robbery with the use of a firearm, a violation of LSA-R.S. 14:64 and LSA-R.S. 14:64.3, and was subsequently adjudicated a fifth felony habitual offender with two prior convictions for crimes of violence. White, 907 So.2d at 181. He was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence and an additional consecutive sentence of five years at hard labor without benefit of parole, probation, or suspension of sentence for the conviction of armed robbery with a firearm. Id.
On appeal, two members of the appellate panel in White noted as patent error the trial court's imposition of the additional five-year sentence under LSA-R.S. 14:64.3 and ordered the additional five-year term deleted as illegal. White, 907 So.2d at 183. These judges viewed the crime of armed robbery with the use of a firearm as a more serious form of armed robbery. White, 907 So.2d at 183. They reasoned the defendant's adjudication under the habitual offender law subjected him to the penalty under that provision only, with the sentence under the habitual offender law replacing the sentence for the underlying crime under La. R.S. 14:64.3. White, 907 So.2d at 183-84.
Judge Williams dissented from the error patent review, finding the conclusion that the defendant's habitual offender sentence replaced his mandatory sentence under LSA-R.S. 14:64.3 erroneous, unsupported by authority, and contrary to the decisions in State v. Williams, 34,369 (La.App. 2 Cir. 2/28/01), 781 So.2d 673 and State v. Lewis, 03-1234 (La.App. 4 Cir. 6/2/04), 876 So.2d 912, writ denied, 04-1855 (La.11/24/04), 888 So.2d 229. White, 907 So.2d at 184-85. See also State v. Williams, 34,370 (La.App. 2 Cir. 2/28/01), 781 So.2d 682, 691; State v. Green, 38,335 (La.App. 2 Cir. 5/12/04), 873 So.2d 889, 899, writ denied, 04-1795 (La.11/24/04), 888 So.2d 227.
We do not find the reasoning of the majority decision in White persuasive, and thus, decline to follow that decision. It is not a crime to be a habitual offender. The statute increases the sentence for a recidivist. The penalty increase is computed by reference to the sentencing provisions of the underlying offense. Similarly, the conditions imposed on the sentence are those called for in the reference statute. State v. Bruins, 407 So.2d 685, 687 (La.1981).
The "reference statute" in the instant case was both LSA-R.S. 14:64 and LSA-R.S. 14:64.3. Under LSA-R.S. 14:64.3, because the dangerous weapon used in the commission of the armed robbery was a firearm, the defendant's sentence was subject to an additional period of five years without benefit of parole, probation, or suspension of sentence to be served consecutively *643 to the sentence imposed under the provisions of R.S. 14:64 as enhanced by the habitual offender law.
This assignment of error is without merit.
CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE AFFIRMED.
DOWNING, J., concurs and assigns reasons.
DOWNING, J.
Because Mr. Bonit withdrew his request to represent himself and because he does not raise the issue of attorney conflict of interest on appeal, I concur with the majority opinion. However, Mr. Bonit has a right to conflict-free counsel, State v. Cisco, 01-2732, passim (La.12/3/03), 861 So.2d 118, passim, and it is unclear from the record that this right was adequately protected.
In State v. McNeal, 99-0070 (La.1/31/92), 594 So.2d 876, the Louisiana Supreme Court reversed a ruling of the Fourth Circuit[1] that held attorneys employed by an indigent defender board are not members of a law firm such that they would be prohibited by Rules of Professional Conduct, Rule 1.10 from representing clients with conflicting interests. In his dissent to the Fourth Circuit opinion, Judge Plotkin clearly explained why employees of an indigent defender board may well have a conflict of interest when they represent defendants with potentially adverse positions. McNeal, 91-2750, 593 So.2d at 730-31. In explaining that attorneys working for an Indigent Defender Board operate as law firm under the meaning of Rule 1.10, Judge Plotkin observed that, "[t]he defendant is entitled to representation that does not create the slightest risk that his tactics or evidence can be compromised by inadvertence or intentional disclosure." Id.
Such risk was not obviated in the matter before us where counsel stated that he did not know if counsel for a co-defendant had access to Mr. Bonit's file. It also was not obviated for the reasons that Judge Plotkin explained. Id. Further, it is not clear from the record whether both counsel were employed by the Indigent Defender Board or whether one or both were hired contract attorneys.
Judge Plotkin explained the statutory scheme for avoiding such conflicts. He points out that La. R.S. 15:145 B allows the appointment of outside counsel in the event of a potential conflict. Id.
For these reasons, based on the information available from the record, I suggest that the trial court was erroneous in its finding that there was no conflict of interest between attorneys in the matter before us.
NOTES
[1] Donald Nicholas was also charged with the same offense on the bill of information.
[2] The predicate offense was set forth as the defendant's May 14, 2001 conviction, under Thirty-first Judicial District Court docket # CR-953-00-2, of possession with intent to distribute marijuana.
[3] We reference the trial transcript for the spelling of Nicholas's name.
[1] State v. McNeal, 91-2750 (La.App. 4 Cir. 1/8/92), 593 So.2d 729.