STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

07-1032

STATE OF LOUISIANA

VERUS

ROGER C. GORDY

**************
APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, DOCKET NO. 70008
HONORABLE VERNON B. CLARK, DISTRICT JUDGE

*************
**SYLVIA R. COOKS**
**JUDGE**
*************

Court composed of Sylvia R. Cooks, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**James R. Mitchell**
**607 South Fifth Street**
**Leesville, Louisiana 71446**
**(318) 239-6709**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Roger C. Gordy**

**William E. Tilley**
**District Attorney**
**Terry W. Lambright**
**Assistant District Attorney**
**P.O. Box 1188**
**Leesville, Louisiana 71446**
**(318) 239-2008**
**COUNSEL FOR STATE/APPELLEE:**
**State of Louisiana**

**COOKS, Judge.**

## STATEMENT OF THE CASE

The State of Louisiana filed a bill of information charging Roger C. Gordy with illegal possession of a stolen thing, a violation of La.R.S. 14:69. A jury found Gordy guilty as charged, and he filed a motion for new trial, which the trial court denied. Gordy was sentenced to serve ten years at hard labor and pay a fine of $2,000 plus court costs. Gordy appeals asserting two assignments of error: (1) the trial court erred in allowing hearsay evidence to be admitted to prove an essential element of the crime, namely, that the property involved was in fact stolen; and (2) the trial court erred in refusing to grant a new trial because the district attorney submitted evidence and argument he knew to be false. For the reasons assigned below, we affirm the conviction of the Defendant.

## STATEMENT OF THE FACTS

In April 2006, the Vernon Parish Sheriff's Office obtained a search warrant to inspect property belonging to Roger Gordy. The deputies were acting on information received from authorities in White Settlement, Texas regarding a stolen white Dodge Ram pickup truck. A confidential informant disclosed that the pickup truck was being stored behind a shed on Gordy's property. When the deputies reached the property, they saw Gordy and approached him. A deputy informed Gordy why they were there, and Gordy led them to the truck. When the deputies asked him about the truck, Gordy replied someone he had known a long time wanted to hide it on his property. Gordy acknowledged that the truck must have been stolen because that would be the only reason to hide it. The deputies found the truck behind a shed covered with a tarp over the cab. The vehicle identification number of the truck matched the vehicle identification number of the stolen Dodge Ram pickup truck

1

from Texas. Gordy was arrested and charged.

## LAW AND DISCUSSION

Gordy was charged with illegal possession of a stolen thing. Louisiana Revised Statutes 14:69 provides, in relevant part:

A. Illegal possession of stolen things is the intentional possessing, procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.

In order to sustain a conviction under this statute, the State must prove, beyond a reasonable doubt, four essential elements: (1) the defendant had the intent to possess, procure, receive, or conceal; (2) a thing of value; (3) which has been the subject of a robbery or theft; and, (4) under circumstances which indicate the offender knew or had good reason to believe that the thing was stolen. *State v. Bruce*, 472 So.2d 79 (La.App. 5 Cir. 1985).

In Gordy's first assignment of error, he asserts the State sought to prove the vehicle was stolen through the use of inadmissible hearsay evidence. The evidence at issue is the business records of Progressive Insurance Company and the White Settlement Police Department report, which was included in the insurance report. The business records were introduced into evidence in conjunction with the testimony of Carl David Bell, a fire and theft claims investigator for Progressive Insurance. The trial court admitted the evidence as an exception to the hearsay rule under La.Code Evid. art. 803, which provides, in relevant part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
. . . .
(6) Records of regularly conducted business activity.
A memorandum, report, record, or data compilation, in any form . . . if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and to keep the memorandum, report, record, or data compilation, all as shown

2

by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

The Defendant contends the trial court erred because Mr. Bell was not the agent from Progressive Insurance who generated the record. He further asserts the owner of the vehicle was not called to testify and, other than the testimony of Mr. Bell and the insurance company file, there is no other direct evidence that the vehicle was in fact stolen.

The hearsay rule has its roots in the fundamental right of a defendant to confront his accusers. There are several exceptions to the hearsay rule one of which is contained in La.Code Evid. art. 803(6), which allows the introduction of records kept in the course of a regularly conducted business activity. However, this exception requires "the custodian or other qualified witness" to testify regarding the preparation or circumstances which produced the business record sought to be introduced. A qualified witness need only have familiarity with the record-keeping system of the company and the ability to satisfy the foundational requirements of La.Code Evid. art. 803(6). *State v. Marston*, 00-589 (La. 3/16/01), 780 So.2d 1058, *quoting United States v. Console*, 13 F.3d 641, 657 (3rd Cir. 1993).

Mr. Bell testified he is the Progressive Insurance agent for fire and theft claims. He received the original file from Sharon Gallagher, the Progressive Insurance agent in Texas, concerning the theft of a white Dodge Ram pickup truck. He testified the file is part of the business records of Progressive Insurance and is kept in the regular course of business. Progressive's Total Loss Worksheet reflected the truck was owned by James and Georganna Newman and Progressive Insurance paid out $28,373.73 on the claim. Mr. Bell testified Progressive Insurance first received notice the truck was stolen when Progressive received a call from the owner, Mr.

3

Newman. Mr. Bell testified the Total Loss Worksheet was generated at the time the claim was paid to the owner. The Progressive Insurance file also contained he initial report from the White Settlement Police Department and the investigative report from the Vernon Parish Sheriff's office indicating the truck had been located in Louisiana. Mr. Bell testified when it received notice the truck had been recovered, Progressive Insurance sent a wrecker truck to pick up the vehicle in Louisiana.

We find no error in the decision of the trial court finding Mr. Bell was a "qualified" person to testify regarding the company's business records. Mr. Bell is a claims agent for the theft division of Progressive Insurance in Louisiana. He was familiar with the record-keeping system of the company and testified regarding his receipt and handling of the file from the agent in Texas. We find the State established that the documents were a true and honest representation of the records of the insurance company.

The Defendant contends the trial court erred in allowing the White Settlement police report into evidence. The police report was part of Progressive's file on the claim. The Defendant correctly asserts investigative police reports are not included as an exception to the hearsay rule. La.Code Evid. art. 803(8)(b)(i). However, in this case, the White Settlement police report was not necessary to prove the vehicle was stolen. This element of proof was supplied by the testimony of Mr. Bell, a theft claims agent, along with the business records of Progressive Insurance indicating payment to the Newmans of $28,373.72 for loss of the truck. Moreover, once payment was made on the claim, Progressive Insurance became the owner of the truck and the victim of the theft. We find no merit in this argument.

In Defendant's second assignment of error, Gordy asserts he was denied a fair trial because: (1) the district attorney submitted evidence and argument he knew to

4

be false in violation of *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173 (1959); and (2) the district attorney knowingly denied the existence of individual whose testimony could exculpate the defendant in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963). This assignment of error centers around the testimony of the Defendant's only witness, Thomas McGlothin. Mr. McGlothlin testified he owns a mechanic shop in Burr Ferry and he occasionally buys and sells cars. He explained he came in contact with the Dodge Ram pick-up truck in the early months of 2006, when he was approached by a friend, Dennis Dowdy. Mr. Dowdy told him that "him and his wife was going through a divorce and me and my wife was going through one too and he brought this truck to me and he wanted to sell it to me and he wanted ninety-five hundred for the truck and wanted to leave it there until he got the paperwork straight." Mr. McGlothlin refused to keep the truck explaining "we had a lot of people breaking in out there and stealing stuff. So, we carried it out to Roger's house out there and we left it there and I told him when he got the paperwork straight that I'd buy the truck." When Gordy was arrested neither Mr. McGlothlin nor Gordy told the police about Mr. Dowdy and his alleged marital problems. Mr. McGlothlin testified he "called Mr. Dowdy and told him about [Gordy's arrest] and [Dowdy] said he was going to come down and straighten it out." But Mr. Dowdy never contacted the sheriff's department and neither did Mr. McGlothin. Mr. McGlothin testified Mr. Dowdy died three weeks before trial. It appears from the record the first time the State learned of Mr. Dowdy was during trial. The defense did not place Mr. Dowdy on their witness list presumably because they knew of his death prior to trial. Gordy argues the State's witnesses and the district attorney denied the existence of Mr. Dowdy thereby destroying the credibility of Mr. McGlothlin.

Detective Ronnie Wiggins and Sheriff Sam Craft testified they had never heard

of a person by the name of Dennis Dowdy. In closing argument, the assistant district attorney also denied the existence of Mr. Dowdy and made the following statement:

> Do we know that there even exists somebody by the name of Dennis Dowdy? I don't. The Sheriff's Department doesn't. Is he dead? Don't even know if he exists. Has he contacted the Sheriff's Department, assuming he died three weeks ago, since April the 1st, 2006? I believe if I had a 2005 Dodge Ram truck, which is a new truck, parked over in the Vernon Parish Sheriff's Office parking lot that I owned and that I had paperwork showing I owned it and I knew, according to Mr. McGlothlin, that that's where it was and assuming that I died three weeks ago, I still had about six or seven month[s] from April 1st, 2006, I believe I'd been contacting somebody wanting to know what you are doing with my truck.

Gordy contends the State knew Dennis Dowdy existed because the State had pending drug charges against him which charges were dismissed after Dowdy's death. Gordy asserts when the district attorney knowingly denied the existence of a corroborating witness for the defense it violated *Napue*. In order "[t]o prove a *Napue* claim, the defendant must show that the prosecutor acted in collusion with the witness to facilitate false testimony." *State v. Broadway*, 96-2659, p.17 (La. 10/19/99), 753 So.2d 801, 814, *cert. denied*, 529 U.S. 1056, 120 S.Ct. 1562 (2000). There is no evidence that the district attorney or the two officers had any direct knowledge of or were involved in the prosecution of Mr. Dowdy on other offenses. The two officers who testified at trial were not involved in the arrest of Mr. Dowdy. There is nothing to suggest the district attorney acted in collusion with the State's witnesses to facilitate false testimony. We find no merit to this argument.

*Brady*, 373 U.S. 83 (1963), requires disclosure by the district attorney of any evidence favorable to the defendant when the evidence is material to guilt or innocence. "[T]he prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *State v. Rosiere*, 488 So.2d 965, 970 (La.

1986).  Only evidence which is material to guilt or innocence is required to be disclosed.  "Evidence is material only if it is reasonably probable that the result of the proceeding would have been different had the evidence been disclosed to the defense." *State v. Marshall,* 94-461 (La. 9/5/95), 660 So.2d 816, 826.  In this case, evidence of Mr. Dowdy's existence and his participation in the events surrounding the secreting of the truck were known and testified to by the defense witness.  When the officers denied knowing Mr. Dowdy, Gordy could have produced evidence of Mr. Dowdy's existence and evidence of his alleged marital problems, but he did not.  It was only at trial that the State became aware Gordy was asserting a third person by the name of Dennis Dowdy was involved in the incident.  Even assuming that Mr. Dowdy's existence was not questioned by the State, the jury could have reasonably concluded the story regarding Mr. Dowdy's marital problems was concocted by the three men, Gordy, McGlothin, and Dowdy, who were all involved in the theft and secreting of the truck. In other words, the story presented by the defense would have been incredible even if told by Mr. Dowdy.  The jury heard evidence that the truck was owned by an individual in Texas and reported stolen.  Additionally, Gordy admitted to the police he assumed the truck was "hot" when he was asked to hide it on his property.  At the hearing on the motion for a new trial, the trial court concluded the State's denial of Mr. Dowdy's existence was not material to a finding of guilt on the part of Mr. Gordy. The trial court stated:

> I think the jury reasonably could have convinced themselves that Mr. McGlothin's testimony could have been just as incredible, notwithstanding whatever Mr., Mr. – was said about Mr. Dowdy.  What – be that as it may, for whatever reason they chose not to believe Mr. McGlothin's testimony and there are – there's enough in the record that had they not heard anything about Mr. Dowdy, they still could have said we don't believe McGlothin at all and we don't believe there was this friend who left the vehicle there for a wife in a – or, or pursuant to some marital dispute in Texas.

7

We agree with the trial court and find no merit in this argument.  Accordingly, we affirm the conviction of Defendant.

## DECREE

Based on the foregoing review of the record, we affirm the conviction of the Roger C. Gordy.

**AFFIRMED.**