47 So.3d 558 (2010)
FORD MOTOR CREDIT COMPANY, Plaintiff-Appellee
v.
Roy JACKSON, Sr., Defendant-Appellant.
No. 45,447-CA.
Court of Appeal of Louisiana, Second Circuit.
August 11, 2010.
Rehearing Denied September 16, 2010.
*559 Culpepper & Carroll, PLLC, Jonesboro, LA, by Bobby L. Culpepper, for Appellant.
Shows & Cali, LLC by E. Wade Shows, for Appellee Austin P. Clancy.
Before GASKINS, MOORE and LOLLEY, JJ.
MOORE, J.
Roy Jackson Sr. appeals a judgment for the balance due on a retail installment contract, $17,173.89. We affirm.

Factual Background
On June 26, 2000, Jackson bought a 1999 Ford Expedition from Victoria Lincoln Mercury in Victoria, Texas. The retail *560 installment contract stated a purchase price of $26,333.06 with no down payment, APR of 10.97%, and one payment of $31,368.91 due June 26, 2001. Ford Motor Credit ("FMC"), to whom the contract was assigned, concedes that Jackson was an employee (the credit application lists him as "dealer/operator") of Victoria Lincoln Mercury; he also signed on behalf of the seller.
Jackson did not make the payment when due. After learning that the Expedition was in Clarksdale, Mississippi, FMC faxed Jackson a voluntary surrender form stating: "[U]nless I redeem the property it may be sold. If the sale price does not cover the balance due plus sale expenses, I will pay you or the dealer the difference." Jackson testified that someone from Ford Motor Company (he insisted he never spoke to anyone at Ford Motor Credit) told him if he signed this, he would "owe nothing." He signed it without reading it and faxed it back on September 26, 2001.
FMC seized the Expedition (which by then had 41,000 miles on it) and, on September 29, sent Jackson a "Notice of seizure and right to redeem," advising that it would be sold at auction unless he paid the current balance of $32,341.34. The certified mail receipt shows that Jackson's wife signed for the notice.
Again, Jackson made no payment. FMC sold the Expedition at an ADESA auction in October 2001 for $15,300, leaving a balance of $15,147.50. On October 13, FMC printed a "Statement of Sale" showing the original amount due, less the sale proceeds, plus the costs of sale, for a balance due of $17,495.84. The statement of sale further advised, "You should immediately remit the amount shown." The statement is addressed to Jackson, but no proof of mailing is attached.

Procedural History and Action in the Trial Court
FMC filed the instant suit in June 2004, seeking the balance of $17,173.89, interest and attorney fees as provided in the contract. By answer, Jackson alleged that at the time of the purchase, he was "the dealer at Durant Ford-Lincoln-Mercury" in Durant, Oklahoma, and that the Expedition should have been placed in the dealer's inventory instead of his personal name; that he signed the voluntary release after being "told that would end everything"; and that he simply did not owe anything.
FMC filed a motion for summary judgment which Jackson opposed with an affidavit admitting that the "Expedition was owned by appearer" but he had placed it on Durant's used car lot; later, when he left Durant, he was unaware that he still had any ownership interest in it; and the voluntary surrender "erroneously stated that your petitioner [sic] would be responsible for any balance." The motion for summary judgment was denied, and the matter proceeded to bench trial in August 2009.
FMC's only witness at trial was Ms. Tina Till, a "field service representative" who regularly testifies and presents exhibits for FMC. She testified that she had custody and control of the documents involved in this case, which are kept in the regular course of business. She admitted that with the exception of the initial retail installment contract, all her exhibits were computer printouts of documents that had been scanned into the company's image retrieval system and were accessible by anyone in the company's national recovery system. Jackson repeatedly objected to all these exhibits as improperly authenticated under La. C.E. art. 803(6); the court took it under advisement, allowing Ms. Till to testify.
*561 Referring to the exhibits, Ms. Till testified that Jackson executed the retail installment contract, made no payments, and attempted several times, without success, to arrange refinancing. Later, he signed a surrender form, received the notice of seizure and statement of sale, and still owed $17,495.84. On cross-examination, she admitted that she had never seen a contract on these termsone balloon payment for the whole amountand that Jackson had been employed by the seller in some capacity, but she maintained there was no documentation that Jackson bought the Expedition to place in Victoria's inventory.
FMC also called Jackson on cross-examination. He admitted he bought the Expedition, made no payments on it, and ultimately signed the voluntary surrender without reading it. He also testified that he did not recall signing a return receipt for the deficiency notice.
On direct examination, Jackson insisted that he sold the vehicle to Durant and placed it in their inventory; when he left Durant in May 2001, it was still sitting on the lot; he thought he had no more ownership interest in it; and he never talked to anyone from FMC. He admitted he had no papers to prove he sold it, as when he left Durant, all such documents belonged to the dealership. The court took the matter under advisement.
By post-trial brief, Jackson argued that FMC's documents were not properly authenticated under C.E. art. 803(6) and that after he sold the Expedition to Durant, he had no further liability. He also contended, for the first time, that the act of voluntary surrender was invalid because it did not comply with La. R.S. 10:9-620. FMC responded that it fully complied by sending Jackson the notice of seizure and statement of sale. It reiterated that authentication was proper under Art. 803(6) and that Jackson simply failed to prove the vehicle was dealer inventory.
By written reasons for ruling, the court found that Ms. Till had sufficient familiarity with the record-keeping system of the company to satisfy the foundational requirements of Art. 803(6); hence, the documents were admissible. The court further found that after Jackson failed to pay, FMC complied with § 9-620 by sending him the notice of seizure and the statement of sale, and that Jackson was bound by the terms of the voluntary surrender even if he did not read it. Finally, the court rejected Jackson's other factual claims as not credible. The court rendered judgment in favor of FMC for $17,173.89, plus interest and attorney fees as stated in the installment contract.
Jackson filed a motion for new trial which was rejected after a hearing. He now appeals, raising three assignments of error.

Discussion: Lack of Authentication
By his first assignment of error, Jackson urges the court erred as a matter of law in admitting FMC's exhibits. He argues that Ms. Till did not prepare any of the records; she testified as to things "to which she would have had no way of having any knowledge"; and, because any person employed by FMC could access these records, "how she could qualify as the custodian is beyond the writer." Citing the comments to Art. 803(6), he argues that the records were "merely oral" and that Ms. Till lacked "first hand knowledge" of them. Finally, he cites two criminal cases in which computer printouts were held inadmissible because the person offering them lacked sufficient knowledge. State v. Bonit, 2005-0795 (La.App. 1 Cir. 2/10/96), 928 So.2d 633, writ denied, 2006-1211 (La.3/16/07), 952 So.2d 688; State v. *562 Smith, 2004-0800 (La.App. 1 Cir. 12/17/04), 897 So.2d 710.[1]
FMC responds that Art. 803(6) does not require the witness to be the person who prepared the records; she need only have familiarity with the record-keeping system of the company. State v. Marston, 2000-0589 (La.3/16/01), 780 So.2d 1058; S. Jackson & Son Inc. v. Aljoma Lumber Inc., 93-2531 (La.App. 4 Cir. 5/26/94), 637 So.2d 1311. It submits that the statute was drafted to allow evidence to be introduced while coping with the intricacies of record keeping using modern technology. State v. Gordy, 2007-1032 (La.App. 3 Cir. 3/12/08), 981 So.2d 45. It urges there was no evidence to show that the digitized documents were inaccurate, and the court did not abuse its discretion in admitting them.
Article 803(6) provides in pertinent part: Art. 803. Hearsay exceptions; availability of declarant immaterial
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * *
(6) Records of regularly conducted business activity. A memorandum, report, record, or other data compilation, in any form, including but not limited to that which is stored by the use of an optical disk imaging system, of acts, events, * * * if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. * * *
As noted above, Ms. Till testified that although she did not personally prepare the documents, she had knowledge of how the records were kept, that they were kept in the regular course of FMC's business, that they were furnished by a person who regularly kept such records for FMC, and that they were made at or near the time of the transaction. On this showing, the court was clearly entitled to find Ms. Till was a "qualified person" under Art. 803(6). State v. Marston, supra; State v. Gordy, supra. Moreover, the fact that various persons at various locations may have entered Jackson's data into the system does not defeat their admissibility if they otherwise satisfy the article. National Information Services v. Gottsegen, 98-528 (La. App. 5 Cir. 6/1/99), 737 So.2d 909, writ denied, 99-2366 (La.10/8/99), 751 So.2d 228. Notably, there was no showing that anyone in the system had altered any of Jackson's documents, of which he admitted signing two and receiving one other; nothing indicates a lack of trustworthiness.
Jackson's final argument, that the records are "merely oral," is completely baseless. The article allows storage of data "in any form," which obviously includes FMC's method of scanning papers into an electronic form (presumably a PDF file), entering it into the company's database, viewing it and printing it when needed. The quaint image of the file cabinet, records clerk and dust mites may have dropped from the equation, but electronic documents that satisfy Art. 803(6) have the same evidentiary value as their more tangible predecessors.
This assignment of error lacks merit.

Lack of Compliance with Statute
By his second assignment of error, Jackson urges the court erred as a matter of *563 law in finding that FMC complied with R.S. 10:9-620. He argues that contrary to subsection (a), he never consented to the acceptance as required by subsection (c), which requires a "record authenticated after default." He further argues that the voluntary surrender and statement of sale violate all provisions of subsection (h): they failed to advise him that he would still owe the deficiency even though the secured party accepts the collateral and reduces the debt; they did not state the amount of the deficiency; they did not explain how the deficiency was calculated; and they did not explain how other charges might affect the deficiency. Jackson concedes that there is no Louisiana caselaw interpreting § 9-620 but argues that it should be strictly construed, namely that the several writings offered by FMC do not satisfy the requirement of a writing, and result in noncompliance.
FMC responds that the voluntary surrender, which it faxed to Jackson, satisfied the requirement of consent under subsection (a), and that Jackson's signature on it constituted authentication under subsection (c). It further argues that the notice of seizure-curiously omitted from Jackson's brief-satisfied subsection (h). Finally, it cites subsection (j) as refuting the claim for strict construction.
The statute, R.S. 10:9-620, is adapted from the Uniform Commercial Code and governs the procedure by which the secured party (creditor) acquires the debtor's interest in the collateral without the need for a sale or other disposition by "strict foreclosure." Id., UCC Comment 2. As it pertains to this case, the statute provides:
§ 9-620. Acceptance of collateral in full or partial satisfaction of obligation; compulsory disposition of collateral
(a) Conditions to acceptance in satisfaction. A secured party may accept collateral in full or partial satisfaction of the obligation it secures only if:
(1) the debtor consents to the acceptance under subsection (c); * * *
(c) Debtor's consent. For purposes of this section:
(1) a debtor consents to an acceptance of collateral in partial satisfaction of the obligation it secures only if the debtor agrees to the terms of the acceptance in a record authenticated after default; * * *
(h) Compliance with mandatory disposition requirement. In a consumer transaction in which a secured party accepts collateral in partial satisfaction of the obligation it secures, the terms agreed to by the debtor under subsection (c)(1) shall include a writing that:
(1) states that the debtor will still owe the deficiency even though the secured party accepts the collateral and reduces the debt;
(2) states the amount of the deficiency;
(3) provides an explanation * * * of how the secured party calculated the deficiency; and
(4) states, if applicable, that future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the amount of the deficiency.
* * *
(j) Substantial compliance. A particular phrasing of the explanation is not required. An explanation complying substantially with the requirements of subsection (h) is sufficient, even if it includes minor errors that are not seriously misleading.
Jackson's first contention, that he never consented to the acceptance, is without merit. He candidly admitted signing (without reading) the voluntary surrender, an act of consent to the acceptance under subsection (a). The faxed document is a *564 record under R.S. 10:9-102(a)(69), as it is "information that is inscribed on a tangible medium"; authentication was accomplished by signing it under R.S. 10:9-102(a)(7)(A). In re Grubbs Const. Co., 328 B.R. 873 (Bankr.M.D.Fla.2005). Moreover, he signed it after he defaulted on the principal obligation. The record shows full compliance with subsection (a) and (c).
Jackson's claims based on subsection (h) are equally unavailing. The voluntary surrender stated, "If the sale price does not cover the balance due plus sale expenses, I will pay you or the dealer the difference," plainly satisfying subsection (h)(1)'s requirement of a writing stating that the debtor "will still owe the deficiency even though the secured party accepts the collateral and reduces the debt." The statement of sale listed the gross balance owing on the contract, deducted the gross proceeds of the sale, and added the expenses of retaking and storing, to yield a deficiency of $17,495.84. This plainly states the amount of deficiency and explains how it was calculated, as required by subsection (h)(2) and (3). No future debits, credits or charges have been alleged, so subsection (h)(4) is inapplicable.
The only arguable portion of Jackson's argument is the claim that "a writing" not multiple writingsmust include all the information listed in subsection (h). This subsection is not part of the model UCC § 9-620, but was engrafted from UCC § 9-616 when Louisiana adopted Chapter 9 in 2001. James A. Stuckey, Louisiana's Non-Uniform Variations in U.C.C. Chapter 9, 62 La. L.Rev. 793, 864 (2002). The source section, UCC § 9-616, requires the secured party to explain how a surplus or deficiency was calculated, after a disposition; Louisiana's redaction of it, R.S. 10:9-620(h)(1), added the requirement of notice that the debtor "will still owe the deficiency," information that obviously comes before the disposition. In our view, it would be factually impossible for the secured party to provide both pre- and post disposition information in one single writing. To require, as Jackson suggests, "one writing," would negate the effects of R.S. 10:9-620. We therefore decline to accept his proposed reading, and hold instead that one writing may satisfy the pre-disposition notice of subsection (h)(1) and one different writing may satisfy the post-disposition notice of subsection (h)(2), (3) and (4).
This conclusion draws further support from the substantial compliance provision of subsection (j). FMC's documents provided all the essential information required by subsection (h), with nothing that could have seriously misled Jackson. The fact that it did so in multiple documents does not, in this case, defeat its compliance with subsection (h).
This assignment of error lacks merit.

Manifest Error Claims
By his third assignment of error, Jackson urges the court erred as a matter of law in finding that FMC proved its case and was entitled to judgment. Jackson reiterates his own version of events, including his contention that somebody at Ford Motor Company told him that if he signed the voluntary surrender, he would have no further obligation; that he had transferred the Expedition to Durant's inventory, and had no interest in it; and, contrary to Ms. Till's testimony, he never communicated with FMC about refinancing, proving that both sides knew he had no further liability. He concludes that because nobody contradicted his testimony, the court erred in rejecting it.
FMC responds that even taking his testimony at face value, Jackson admitted signing the retail installment contract, making no payments, and signing the voluntary surrender; these facts will support the judgment. FMC concludes the court did not abuse its discretion in dismissing his account as incredible.
*565 In reviewing the factual findings of a trial court, we are limited to a determination of manifest error. Fontenot v. Patterson Ins. Co., 2009-0669 (La.10/20/09), 23 So.3d 259, and citations therein. It is well settled that an appellate court may not disturb the district court's finding of fact unless the record establishes that a factual, reasonable basis does not exist and the finding is clearly wrong or manifestly erroneous. Id. The issue to be resolved it not whether the factfinder was right or wrong, but whether its conclusion is reasonable. Id.
Some of Jackson's account is undoubtedly true: he was the dealer at Victoria Lincoln Mercury, signing the retail installment contract in that capacity; only a dealer would likely get a loan with one lump-sum payment due in one year. He admitted not making that lump-sum payment, or any other payments, and then signing (without reading) the voluntary surrender-points corroborated by Ms. Till.
Important parts of his testimony, however, are contradicted by FMC's records. Contrary to his claim that nobody from FMC ever talked to him, the contact history report shows that FMC agents called him several times in September and October 2001 to discuss refinancing, a circumstance that confirms that he still owed the debt. He also claimed that somebody told him that signing the voluntary surrender would end his obligation, but the document itself refutes this. On the crucial claim that this Expedition was actually intended as inventory for Victoria, and later sold to Durant, there was absolutely no corroboration. Surely on a matter of such importance, a dealer would have retained copies of these vital papers even if the originals belonged to the dealership and remained there after he left. In effect, Jackson asserted his own poor record keeping as a defense to this claim.
On this record, the district court did not abuse its discretion in finding that Jackson's version of events was not credible. This assignment of error lacks merit.

Conclusion
For the reasons expressed, the judgment is affirmed. All costs are to be paid by the appellant, Roy Jackson Sr.
AFFIRMED.
APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, GASKINS, MOORE and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] Jackson cites a third criminal case, State v. Gordy, infra, for the same proposition, but a cursory reading of Gordy reveals that it found the computer printout to be admissible, a holding diametrically opposed to Jackson's argument.